**O. F. NELSON & CO., Limited, et al. v. UNITED STATES.**

**GENERAL COCOA CO., Inc., et al. v. SAME.**

**GENERAL COCOA CO., Inc., v. SAME.**

Nos. 23741–S, 23742–G, 23797–S.

District Court, N. D. California, S. D.

Oct. 7, 1943.

Farnham P. Griffiths and McCutchen, Olney, Mannon & Greene, all of San Francisco, Cal., for libelants.

Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for respondent.

ST. SURE, District Judge.

Libelants sue in negligence for the loss of four shipments of cocoa beans which they allege respondent undertook to carry from Pago Pago, Samoa, to San Francisco. The libelants in the first case listed above seek damages of $21,000 for the loss of 759 bags of cocoa beans. The libelants in the second case seek damages of $30,000 for the loss of 850 bags of cocoa beans. The libelants in the third case are the same libelants and state the same cause of action as in the second case, the third case having originally been filed in the New York District Court, and thereafter transferred to the Northern District of California. The actions were consolidated for trial, counsel stipulating that the evidence offered would apply to all actions, but that separate judgments should be rendered in each action.

The cocoa beans which are the subject of the actions had been stored in a warehouse at Pago Pago for about two months prior to their loss. On January 20, 1942, a convoy, of which the freighter "Jupiter" was a part, arrived at Pago Pago. These were the first ships to arrive after the attack on Pearl Harbor by the Japanese on December 7, 1941. The island had been shelled by a Japanese submarine on January 11, while the convoy was en route, and according to the testimony of Lt. Commander John W. Crumpacker, who was attached to the Naval Station at Tut-

uila, the island on which Pago Pago is located, it was feared that the Japanese would contest the landing of the convoy. Troops, military equipment and supplies, construction materials, food stuffs, and other military necessities were being unloaded with great haste for the purpose of reinforcing the island defenses. Marines and native stevedores, many of the latter being untrained, were working night and day to complete the unloading. The rainy season had begun, and there was insufficient warehouse space for storing the supplies brought in by the convoy. The Government was in great need of the space occupied by the cocoa beans, and it undertook on the night of January 29 to remove them and load them on the freighter "Jupiter", which was moored at the one dock which the harbor possessed, by means of a lighter. Other vessels were waiting to be unloaded.

There can be no question that in ordinary times and under usual circumstances, the manner of transporting the beans from the warehouse and loading them on the "Jupiter" would constitute negligence. The lighter used was dry and her top seams were leaking; there was water in her hold; she was overloaded with sacks of cocoa beans by at least ten tons so that her top seams were shipping water; the bags were piled so high that she was unstable; and the load was removed unevenly so that the lighter rocked and water poured over the sacks of beans.

However, in view of the urgent necessity for hurried preparation for defense of the island and the shortage of trained labor to care for the tremendous influx of military and civilian supplies, I cannot find that any negligence is attributable to the Government. It was essential that the cocoa beans be removed from the warehouse. Had there been no ship to which they could be transported, it appears that the Government would under the circumstances then existing have been justified in removing them and leaving them in the rain to spoil or in dumping them into the sea, in order that it might secure the storage space which they occupied. This is in effect what happened, and the fact that an ineffectual effort was made to save the beans does not alter the situation, since military necessity justified the action taken by the Government.

It has been held that when private property is taken or destroyed as a war measure, the owner may under certain circumstances (in cases not sounding in tort, 28 U.S.C.A. § 250, subd. 1) recover from the Government on a theory of implied contract, and there is a possibility that libelants' action might lie in the Court of Claims. It appears, however, that the acts of the Government were justified by the necessities of war and the public defense, and that it was in no sense guilty of negligence.

It is contended by the Government that the vessel "Jupiter" was a public vessel at the time of the loss, but I think it unnecesary to decide this question. Under the facts shown, even if it be said that the Government had the liability of a common carrier, it would not be required to insure libelants against a loss caused wholly by the exigencies of war.

The libels will be dismissed, with costs to respondent.